**ALLIED MUTUAL INSURANCE COMPANY and Hastco, Inc., Plaintiffs,**

v.

**UNITED STATES of America, Defendant and Third–Party Plaintiff.**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Third–Party Defendant.**

**No. 96–4052–SAC.**

United States District Court, D. Kansas.

Feb. 28, 1997.

John H. Hutton, Gehrt & Roberts, Chartered, Topeka, KS, for Allied Mut. Ins. Co. and Hastco, Inc.

Jackie A. Rapstine, Office of U.S. Atty., Topeka, KS, for U.S.

James R. McCabria, Hall, Levy, DeVore, Bell & Ott, P.A., Coffeyville, KS, for State Farm Mut. Auto. Ins. Co.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the third-party defendant State Farm Mutual Automobile Insurance Company's ("State Farm's") motion for summary judgment (Dk.14) and the third-party plaintiff United States of America's ("United States'") motion for summary judgment against State Farm (Dk.16). The issue in both motions is whether State Farm, as the insurer of a postal carrier, owes a duty to defend and indemnify the United States, as an additional insured under the postal carrier's insurance, when the policy excludes coverage "for any damages: for which the United States might be liable for the insured's use of any vehicle." Relying on case law from other jurisdictions, the United States argues the exclusion is ambiguous and, thus, invalid. State Farm insists the exclusion is not ambiguous under the circumstances of this case.

## SUMMARY JUDGMENT STANDARDS

The court simply refers to the oft-stated standards governing summary judgment motions. *Hartman v. Great Central Ins. Co.*, 915 F.Supp. 250, 252 (D.Kan.1996). The court applied these standards in deciding the parties' motions for summary judgment.

## STATEMENT OF UNCONTROVERTED FACTS

For purposes of these motions only, the court considers the following facts to be uncontroverted.

1. On April 1, 1994, Larry J. Fankhauser, a mail carrier for the United States Postal Service, was driving his own vehicle in the performance of his duties as a mail carrier

when he was involved in an accident at an uncontrolled intersection.

2. Fankhauser's vehicle collided with another vehicle operated by Larry Parsons, an employee of the plaintiff Hastco, Inc. The plaintiff Hastco was insured by the plaintiff Allied Mutual Insurance Company which paid the damages allegedly sustained by the plaintiff Hastco, Larry Parsons, and a passenger in Parson's vehicle, Cody Parsons, less the $250.00 deductible.

3. The plaintiffs filed this action against the United States pursuant to the provisions of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*

4. At the time of the accident, Fankhauser's vehicle was insured with State Farm on a policy issued to Fankhauser.

5. The United States filed a third-party action against State Farm for indemnity alleging that it is an additional insured under Fankhauser's policy and that any purported exclusion applicable to the United States is ambiguous.

6. State Farm issued to Fankhauser a policy which contained the following terms regarding who is an insured:

When we refer to *your* car, a *newly acquired car* or a *temporary substitute car*, *insured* means:

1. *you* ;
2. *your* spouse;
3. the *relatives* of the first *person* named in the declarations;
4. any other *person* while using such a *car* if its use is within the scope of the express or implied consent of *you* or *your spouse* ; and
5. any other *person* or *organization* liable for the use of such a *car* by one of the above *insureds.*

(underlining added). There is no dispute that the United States is an additional insured by reason of the underlined language.

7. The issued policy includes the following relevant exclusion:

THERE IS NO COVERAGE

. . . .

2. FOR ANY DAMAGES:

a. FOR WHICH THE UNITED STATES MIGHT BE LIABLE FOR THE *INSUREDS* USE OF ANY VEHICLE.

The meaning of this exclusion is the subject of the pending motions.

## KANSAS LAW ON CONSTRUCTION OF INSURANCE CONTRACTS

State Farm's policy is construed applying the law of Kansas which is where the policy was written. *Bendis v. Federal Ins. Co.*, 958 F.2d 960, 962 (10th Cir.1991). The construction, meaning and legal effect of written instruments is generally an issue for the court. *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 240, 865 P.2d 182 (1993). Being a contract, an insurance policy is be construed, if possible, so "as to give effect to the intention of the parties." *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992). "Under Kansas law, the intent of the parties is determined from the instrument as a whole and *circumstances of the parties.*" *Bendis*, 958 F.2d at 962 (citations omitted) (underlining added). "The test to determine the intention of the parties is what a reasonable person in the position of the insured would have understood the policy terms to mean." *Dodson Aviation, Inc. v. Rollins, Burdick, Hunter of Kansas, Inc.*, 15 Kan.App.2d 314, 320, 807 P.2d 1319 (citation omitted), *rev denied*, 249 Kan. 775 (1991).

" 'Policies must be construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary and popular sense.' " *Pink Cadillac Bar & Grill, Inc. v. U.S. Fidelity & Guar. Co.*, 22 Kan.App.2d 944, 948, 925 P.2d 452 (1996) (quoting *Bramlett v. State Farm Mutual Auto. Ins. Co.*, 205 Kan. 128, 130, 468 P.2d 157 (1970)), *rev. denied*, 261 Kan. —— (Feb. 4, 1997). "Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail." *Catholic Diocese*, 251 Kan. at 693, 840 P.2d 456. "Coverage clauses of automobile liability policies are to be broadly interpreted to afford the greatest possible protection to the insured while ex-

clusionary clauses are interpreted narrowly." *Central Security Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 334, 681 P.2d 15 (1984).[1]

■ A policy term is ambiguous if " 'the words used to express the meaning and intention of the parties are insufficient in a sense that the contract may be understood to reach two or more possible meanings.' " *Central Security*, 235 Kan. at 334, 681 P.2d 15 (quoting *Western Casualty & Surety Co. v. Budig*, 213 Kan. 517, 519, 516 P.2d 939 (1973)). An ambiguity does not arise until the application of the relevant rules of interpretation to the face of the policy leaves it genuinely uncertain which one of two or more possible meanings is the proper one. *Patrons Mut. Ins. Assn. v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987). "The fact that terms of a policy of insurance may be construed as ambiguous, when applied to one set of facts, *does not make them ambiguous as to others which come directly within the purview of such terms.*" *Clark v. Prudential Ins. Co.*, 204 Kan. 487, 493, 464 P.2d 253 (1970) (underlining added) (citing *Smith v. Mutual Benefit Health & Acc. Ass'n*, 175 Kan. 68, 70, 258 P.2d 993 (1953)).

Courts, however, are not to create an ambiguity "where in common sense, there is none." *Pink Cadillac*, 22 Kan.App.2d at 948, 925 P.2d 452 (citation omitted). Nor are courts to resort to "a perversion of the language or the exercise of inventive powers" to fashion an ambiguity in circumstances where none exists. *Central Security*, 235 Kan. at 333, 681 P.2d 15. " 'The court will not torture words to import ambiguity when ordinary meaning leaves no room for such.' " *City of Salina, Kan. v. Maryland Cas. Co.*, 856 F.Supp. 1467, 1479 (D.Kan.1994) (quoting *Canal Ins.. Co. v. Earnshaw*, 629 F.Supp. 114 (D.Kan.1985)). For that matter, an insurer need not define every term in the policy " '*ad infinitunm*, but may rely on the ordinary meaning of words.' " *City of Salina*, 856 F.Supp. at 1479 (quoting *Titan Hold-*

*ings Syndicate v. City of Keene, N.H.*, 898 F.2d 265, 269 (1st Cir.1990)).

## BACKGROUND ON SPECIFIC EXCLUSION

Effective March of 1962, the Federal Driver's Act amended the FTCA, 28 U.S.C. § 2679(b)-(e), essentially making the FTCA the exclusive remedy against a federal employee for any property damage or personal injury resulting from his negligent operation of a vehicle within the scope of his employment. Despite this amendment, federal courts adhered to the position that the United States was an insured under the omnibus clause of the automobile liability policies. *State Farm Automobile Ins. Co. v. Malcolm*, 259 N.W.2d 833, 836–37 (Iowa 1977); *see, e.g., Government Employees Insurance Company v. United States*, 349 F.2d 83, 85–86 (10th Cir.1965), *cert denied*, 382 U.S. 1026, 86 S.Ct. 646, 15 L.Ed.2d 539 (1966). Thereafter, the insurance industry began including exclusions from coverage for federal employees operating their vehicles within the scope of their employment. *Malcolm*, 259 N.W.2d at 837. "It is thus clear that the purpose of the type of exclusion herein litigated is to prevent the federal government from recovering indemnity against the private insurance carrier...." *Id.*

The United States argues that *Ogima v. Rodriguez*, 799 F.Supp. 626 (M.D.La.1992) "is dispositive of the issue before the court." [2] (Dk.17, p. 8). In that case, State Farm denied liability coverage on the same exclusion as here, "[f]or damages for which the United States might be liable for the insured's use of any vehicle." The United States argued the exclusion was "invalid" on the grounds of being ambiguous, comprehensive in scope and violative of Louisiana compulsory law and public policy. 799 F.Supp. at 629. The district court found the exclusion ambiguous citing in support the Iowa Supreme Court's decision in *Malcolm*, 259

---

**1.** "It is the general rule that exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." *Upland Mutual Insurance,*

*Inc. v. Noel*, 214 Kan. 145, 149, 519 P.2d 737 (1974).

**2.** Of course, this decision is not controlling precedent in this jurisdiction, and whatever weight it carries will depend entirely on the persuasive quality of its reasoning.

N.W.2d 833,[3] and the Florida District Court of Appeal decision in *Reeves v. Miller*, 418 So.2d 1050 (1982).[4] The district court referred to similar exclusions written by other insurers and found them clear and specific in contrast to State Farm's exclusion.[5] In relevant part, the district court held:

> On the other hand, the provision in the State Farm policy fails to specifically identify the insureds who are being denied coverage and the circumstances and nature of the liability intended to be excluded. Such vague references as "any damages for which the United States *might* be liable" is too ambiguous, vague and overly comprehensive. Louisiana requires an insurer to draft an exclusion in clear, specific, unambiguous and restrictive-limited terms. The burden is on State Farm to prove the legal sufficiency of its exclusion. State Farm has failed to meet this burden. In fact, State Farm has conceded in its briefs that the language contained in its exclusion "would be against public policy" under certain circumstances. To allow an insurer to pick and choose when there might be coverage afforded or denied depending on the facts is inconsistent with Louisiana law. The terms of the exclusion should be such that it is clear who is insured and what is excluded.

799 F.Supp. at 631 (footnotes omitted). In short, the district court struck down the exclusion as invalid for being ambiguous in three respects: (1) who are the affected in-, sureds; (2) when and under what circumstances "might" the government "be liable;" and (3) what kinds of governmental liability are covered.

The United States cites two other cases following the approach taken in *Ogima*; they are *Dziubakowski v. United States*, No. CIV-2-94-47, slip op., 1994 WL 914019 (D.Tenn. Dec. 2, 1994), and *Comes v. United States*, 918 F.Supp. 382 (D.Ga.1996).

For all relevant purposes, the facts in *Dziubakowski*, including the exclusion, are identical to the case at bar. The district court found the exclusion ambiguous largely for the same reasons expressed in *Ogima*. There are, however, several other noteworthy points found in the *Dziubakowski* opinion. The district court recognized that while the *Ogima* decision cites *Malcolm*, and *Reeves* it really "stands upon its own facts." *Dziubakowski*, slip op. at 9. The district court also cited several cases on the enforceability of this exclusion, including the case of *Becker, et vir v. Lawrence, et ux, et al. v. State Farm Mutual Automobile Insurance Co.* No. 93-C-0834-C, 1994 WL 913929 (D.Wis.1994), which had upheld the exclusion "in light of the particular factual situation before her in which the United States was undisputedly liable." *Dziubakowski*, slip op. at 5. The *Dziubakowski* court quoted the following from the *Becker* opinion: " 'the United States' concession is the end of the matter. The exclusion in State Farm's policy

---

**3.** In *Malcolm*, the federal district court had dismissed the federal employee based on the FTCA and had dismissed the FTCA claim for failure to exhaust administrative remedies. The plaintiff still had a claim against the federal employee's spouse on the basis of Iowa law. The question there was whether the court "should interpret the language of the exclusion clause so as to exclude only those claims against the particular persons covered by the FTCA but not related claims arising out of the same occurrence." 259 N.W.2d at 837. The court found the exclusion ambiguous to the extent that it could cover all insureds or just the insureds who may be liable under the FTCA. The court noted that "the natural inference from the expectations of an average policy applicant is that the exclusion does not apply where a named insured who is a non-governmental employee-owner of a covered automobile is sued pursuant" to Iowa law. 259 N.W.2d at 838. Thus, the Iowa Supreme Court found an ambiguity in a factual context unrelated

to the case at bar and, likewise, unrelated to the case of *Ogima*.

**4.** In *Reeves*, the injured party sued the federal employee and his private insurer, State Farm. The trial court granted summary judgment for State Farm based on an exclusion for damages as to "any obligation for which the United States may be liable under the federal tort claims act." 418 So.2d at 1050. The Florida District Court of Appeal found that the exclusion was not contemplated by the Florida statute requiring coverage and, thus, was invalid as contrary to public policy. This decision does not consider whether the exclusion was ambiguous or not.

**5.** Arguably, a court strains to find ambiguity when it resorts to contrasting the terms of two separate contracts between two different parties. That a term can be written more clearly is not a conclusive test for ambiguity.

is unambiguous as it applies to the facts of this case. There is no need to anticipate the fact situations hypothesized by the United States; they can be dealt with if and when they arise.' " *Dziubakowski*, slip op. at 5. The *Dziubakowski* court chose the *Ogima* approach over *Becker* saying that "[a] phrase in a contract is either ambiguous or it is not" and this determination· is not "fact-specific." *Dziubakowski*, slip op. at 5, 10.

Like *Dziubakowski*, the relevant facts in *Comes* are identical to the case at bar. After discussing in some detail the holdings in *Ogima*, *Malcolm*, and *Reeves*, the district court in *Comes* concluded that Georgia law followed the same general rules for construing insurance policies as found in Louisiana and applied in *Ogima*. The district court then held:

> The holding in *Ogima* is directly applicable to the present case and is persuasive authority for the interpretation of the policy language at issue herein. The court therefore holds that exclusion 3.a. in the policy State Farm issued Ms. McGowan is ambiguous and vague and should be construed against the insurer under Georgia law.

918 F.Supp. at 386. The district court, however, never states thé exact narrow construction it gives this exclusion other than to say the United States is not an insured subject to the exclusion. The *Comes* opinion adds nothing to the *Ogima* approach except for its abbreviated effort at distinguishing *DeBord v. United States*, 870 F.Supp. 250 (C.D.Ill. 1994).[6]

Like *Ogima*, *Dziubakowski* and *Comes*, the facts in *DeBord* are identical to the extent that the federal employee's private insurer asserts an exclusion for denying coverage to the United States on a FTCA claim. The exclusion in *DeBord* is phrased differently: "[w]e do not provide coverage under

Section 1 for: ... any obligation for which the United States may be held liable under the Federal Tort· Claims Act." 870 F.Supp. at 252.[7] The district court held:

> Under the facts of this case, the Court must confine its decision to whether the exclusion in Dittmer's policy is ambiguous as applied to the United States. The Court finds that the language of the exclusion is free and clear from doubt in its applicability to the United States. The plain language of this exclusion explicitly provides that the United States will be excluded from coverage under Dittmer's policy if it is sued under the FTCA. Consequently, the Court finds that the only reasonable interpretation of this exclusion, as applied to the United States, is that the United States was intended to be excluded from coverage on any claims brought against the United States under the FTCA. Because the Court finds that the exclusion is clear and unambiguous, there is no need for construction. Therefore, the exclusion will be applied as written to exclude the United States, as an insured, from coverage on a claim brought under the FTCA.

870 F.Supp. at 253–54. The critical distinction in *DeBord* is not in the language of the particular exclusion but in the fact that the district court confined its decision to whether the policy was ambiguous as applied to the United States. Illinois law[8] required this approach: " 'to determin[e] whether an ambiguity exists, the provision in question must be read in its factual context, not in isolation.' " *DeBord*, 870 F.Supp. at 252 (quoting *Transamerica Ins. Co. v. South*, 975 F.2d 321, 321 (7th Cir.1992) (quoting *Community State Bank v. Hartford Ins. Co.*, 187 Ill. App.3d 110, 134 Ill.Dec. 810, 812, 542 N.E.2d 1317, 1319 (1989))). The *DeBord* opinion ap-

---

**6.** The court's research yielded one more decision following *Ogima*, see *Lentz v. United States*, 921 F.Supp. 628 (N.D.Iowa 1996). The facts in *Lentz* are indistinguishable, and its reasoning goes no further than to follow *Ogima* and *Mroz v. United States*, No. 93–411–WLB, 1994 WL 901498 (D.Ill. July 22, 1994).

**7.** This exclusion is identical to the one construed in *Malcolm*. The court in *Ogima* relied on *Malcolm* in finding an ambiguity.

**8.** In its response brief (Dk.19), The United States also cites the unpublished decision of *Mroz v. United States*, No. 93–411–WLB, 1994 WL 901498 (D.Ill. July 22, 1994). This two-page decision cites only *Ogima* and does not refer to any Illinois law on the construction of insurance policies.

pears consistent with the *Becker* decision that was discussed in *Dziubakowski*.

## ANALYSIS

As shown above, the case law construing this exclusion is divided into two camps. The rationale and reasoning in *DeBord* and *Becker* more closely fit the facts at issue and law to be applied here. For the reasons that follow, the court finds the exclusion is clear and unambiguous in its application to this case.

■ Kansas law plainly contemplates that insurance policies are to be construed under the particular circumstances of the parties. *Bendis*, 958 F.2d at 962. "The fact that terms of a policy of insurance may be construed as ambiguous, when applied to one set of facts, *does not make them ambiguous as to others which come directly within the purview of such terms*." *Clark v. Prudential Ins. Co.*, 204 Kan. at 493, 464 P.2d 253 (underlining added). This rule of construction is similar to the ones stated and followed in *DeBord* and *Becker*.

■ When analyzed under the facts of our case and not those created and argued by the United States in reliance on *Ogima*, the court finds no ambiguities. It does not matter here whether the exclusion specifies all the insureds affected, because the exclusion plainly identifies the United States as an insured subject to its terms. *See DeBord*, 870 F.Supp. at 253; *cf Malcolm*, 259 N.W.2d at 837 (In dicta, the court said, "It is thus clear that the purpose of the type of exclusion herein litigated is to prevent the federal government from recovering indemnity against the private insurance carrier ...."). In fact, the court in *Ogima* never said the exclusion did not plainly identify the United States as an insured affected by the exclusion. Rather, "[t]he court in *Ogima* actually determined that because the clause failed to specifically identify which insureds were covered, it was, obviously, invalid as to any

insured." *DeBord*, 870 F.Supp. at 253. The *Ogima* approach clashes with the above Kansas law.

Under the facts of this case, the court also finds no ambiguity concerning when and under what circumstances "might" the government "be liable" or concerning what kinds of governmental liability are covered. The exclusion plainly excludes the United States from coverage when it is sued for an insured's use of a vehicle. There is no dispute here that the United States is liable for any alleged damages awarded as a result of Fankhauser's alleged negligence.[9] The court need not contemplate how this exclusion would apply to other situations like when the federal employee is the insured challenging the exclusion, or when the circumstances for holding the United States liable under the FTCA have not been satisfied, or even when the theory of liability is other than under the FTCA. Any ambiguities that arguably exist under these hypothetical situations do not create reasonable interpretations which would provide coverage for the United States as insured under the facts here. Indeed, a reasonable insured in the United States position here could reasonably interpret the exclusion only one way, that is, the United States is not covered for damages when it has been sued and admitted its liability under the FTCA for any alleged damages resulting from the federal employee's alleged negligent use of a vehicle within the scope of his federal employment.

This case is distinguishable from *Ogima* in another key respect. In Kansas, "[i]nsurance policies are to be enforced as written so long as the terms to do not conflict with pertinent statutes or public policy." *Spivey*, 254 Kan. at 240, 865 P.2d 182. The court in *Ogima* held that because the exclusion was "overly comprehensive," it was inconsistent with Louisiana law and, thus, invalid. 799 F.Supp. at 631. Such a conclusion is inconceivable in Kansas, since K.S.A. 40–3107(i)(1)[10] expressly permits an insurer to

---

9. The United States has admitted that Fankhauser was acting within the scope of his employment. The FTCA makes the United States liable for any damages resulting from Fankhauser's negligence. Consequently, the United States is

liable for any damages awarded in this suit based on Fankhauser's negligence.

10. In relevant part, K.S.A. 40–3701(i) provides:
"[A]ny insurer may exclude coverage:

exclude coverage on terms essentially identical to those stated in State Farm's policy.

Having found that the State Farm policy specifically and plainly excludes the United States from coverage as an additional insured under the facts of this case, the court summarily rejects the United States' argument that State Farm has a duty to defend. State Farm is entitled to summary judgment.

IT IS THEREFORE ORDERED that the third-party defendant State Farm's motion for summary judgment (Dk.14) is granted, and the third-party plaintiff United States' motion for summary judgment against State Farm (Dk.16) is denied.

(1) For any damages for which the United States government might be liable for the

insured's use of the vehicle; ...."